PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

IAN RALPH BLACKSTOCK, a/k/a Ian R.
Blackstock, a/k/a Black,
          *Defendant-Appellant.*

No. 05-7709

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CR-93-350)

Argued: September 28, 2007

Decided: January 9, 2008

Before TRAXLER and SHEDD, Circuit Judges,
and Norman K. MOON, United States District Judge for the
Western District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge Traxler wrote the
opinion, in which Judge Shedd and Judge Moon joined.

## COUNSEL

**ARGUED:** Neal Lawrence Walters, UNIVERSITY OF VIRGINIA
SCHOOL OF LAW, Appellate Litigation Clinic, Charlottesville, Vir-
ginia, for Appellant. Richard Daniel Cooke, Special Assistant United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,

Richmond, Virginia, for Appellee. **ON BRIEF:** Mitchell A. Mosvick, Third Year Law Student, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Appellate Litigation Clinic, Charlottesville, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, James Strawley, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

We granted a certificate of appealability to permit Ian Ralph Blackstock to challenge the district court's dismissal of Blackstock's motion under 28 U.S.C.A. § 2255 as successive. We conclude that the motion was not successive because the district court recharacterized a previous motion filed by Blackstock as a § 2255 motion without giving Blackstock the notice required by *United States v. Castro*, 540 U.S. 375 (2003). Although no notice of the recharacterization would have been required under the rules we set out in *United States v. Emmanuel*, 288 F.3d 644 (4th Cir. 2002), the portion of *Emmanuel* that sanctions the district court's action is inconsistent with the Supreme Court's approach to the issue in *Castro*. Accordingly, we vacate the district court's order and remand for further proceedings.

I.

Blackstock pleaded guilty to federal weapons charges in 1993. In 2001, he filed a motion seeking to require the government to produce all documents associated with his case. Although the only relief requested in the motion was the production of the requested information, Blackstock noted in the motion that his conviction had been invalidated by the Supreme Court's then-recent decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The district court recharacterized Blackstock's discovery motion as a petition under 28 U.S.C.A. § 2255, and, because *Apprendi* had not been applied retroactively, the court denied the petition on the merits. Blackstock unsuccessfully moved for reconsideration of the order, but he did not appeal.

In 2005, Blackstock filed a motion under Rule 60(b) of the Federal Rules of Civil Procedure seeking to set aside the district court's 2001 ruling. Blackstock argued that the district court had improperly converted his 2001 discovery motion into a § 2255 petition. Blackstock attached a new § 2255 petition to his Rule 60 motion.

The district court denied Blackstock's Rule 60 motion. Looking to this court's pre-*Castro* decision in *Emmanuel*, the district court concluded that no notice of the conversion of the discovery motion into a § 2255 petition was required. The district court then dismissed the § 2255 petition filed with the motion, because Blackstock had not received permission from this court to pursue a second or successive § 2255 petition. *See* 28 U.S.C.A. § 2244(b) (West 2006).

## II.

As we explained in *Emmanuel*, pre-AEDPA[1] courts "received various and sundry post-conviction motions from prisoners, examined their substance and the relief sought, and, when appropriate, routinely treated certain of them as having been made pursuant to § 2255, regardless of the label the prisoner gave the motion." *Emmanuel*, 288 F.3d at 647. AEDPA, however, imposed significant limitations on a prisoner's ability to file successive § 2255 motions. *See* 28 U.S.C.A. § 2255 (West 2006). Because of these limitations, a decision to recharacterize a prisoner's motion as arising under § 2255 can have adverse consequences:

> If a district court receiving a motion under some other provision of law elects to treat it as a motion under § 2255 and then denies it, that may cause the movant's subsequent filing of a motion under § 2255 to be barred as a "second" § 2255. Thus a conversion, initially justified because it harmlessly assisted the prisoner-movant in dealing with legal technicalities, may result in a disastrous deprivation of a future opportunity to have a well-justified grievance adjudicated. The court's act of conversion which we approved under pre-AEDPA law because it was useful and harmless might,

---

[1]The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996).

under AEDPA's new law, become extraordinarily harmful
to a prisoner's rights. A prisoner convicted pursuant to
unconstitutional proceedings might lose the right to have a
single petition for habeas corpus adjudicated, solely by rea-
son of a district court's having incorrectly recharacterized
some prior motion as one brought under § 2255.

*Emmanuel*, 288 F.3d at 647-48 (quoting *Adams v. United States*, 155
F.3d 582, 583-84 (2d Cir. 1998) (per curiam)).

Given the post-AEDPA problems that could be caused by recharac-
terizing a prisoner's post-conviction pleading, this court in *Emmanuel*
imposed certain limitations on a district court's exercise of its discre-
tion to recharacterize a filing. We held that a district court may not
recharacterize a prisoner's filing as a § 2255 petition without notify-
ing the prisoner of its intent to recharacterize the motion, warning the
prisoner of the effects of recharacterization, and giving the prisoner
an opportunity to withdraw or amend his motion. *See id.* at 649-50.
We explained, however, that "the notice requirements imposed in this
opinion are based on the assumption that the recharacterization will
have some adverse consequence on the movant." *Id.* at 650. There-
fore, "[i]n cases where no adverse consequences will ensue, the dis-
trict court need not give the movant any notice prior to proceeding
with the recharacterization." *Id.*

The district court relied on *Emmanuel*'s exception to the notice
requirement when considering Blackstock's 2005 Rule 60 motion and
§ 2255 petition. The court determined that no adverse consequences
flowed from the recharacterization of Blackstock's 2001 discovery
motion because any subsequent § 2255 petition would have been
untimely, given that Blackstock was convicted in 1993. *See, e.g.*,
*Brown v. Angelone*, 150 F.3d 370, 375 (4th Cir. 1998) (concluding
that prisoners whose convictions became final before the enactment
of AEDPA had until April 24, 1997, one year after AEDPA's effec-
tive date, to file a federal habeas petition). Because the recharacteriza-
tion did not adversely affect Blackstock, the district court concluded
that no notice was required under *Emmanuel*. And because no notice
was required, the 2001 discovery motion was properly characterized
as a § 2255 petition. The district court therefore denied Blackstock's
Rule 60 motion and dismissed the 2005 § 2255 petition as successive.

On appeal, Blackstock contends that while the district court's analysis might be consistent with the rules set forth in *Emmanuel*, it is not consistent with the Supreme Court's approach to the issue in *Castro*, which was decided after we issued our opinion in *Emmanuel*. We agree.

In *Castro*, the Supreme Court agreed with the circuit courts to have considered the issue that with the advent of AEDPA and its restrictions on successive petitions, limitations on a district court's power to recharacterize a prisoner's motion were needed. The Court held that if a district court recharacterizes a prisoner's motion as his first § 2255 motion,

> the district court must notify the *pro se* litigant that it intends to recharacterize the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on "second or successive" motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has.

*Castro*, 540 U.S. at 383. If the district court fails to give the required notice, "the motion cannot be considered to have become a § 2255 motion for purposes of applying to later motions the law's 'second or successive' restrictions." *Id.*

*Castro*'s requirement that notice be given before a filing is recharacterized as a § 2255 petition would appear to be inconsistent with the exception to the notice requirement that we recognized in *Emmanuel*. The government, however, contends that because *Castro* involved a recharacterization that in fact worked to the detriment of the prisoner, the Supreme Court had no opportunity to consider whether the notice requirement should be applied in cases where the recharacterization does not negatively affect the prisoner. The government therefore contends that *Castro* should not be understood as rejecting *Emmanuel*'s exception to the notice requirement and that it was proper for the district court to apply the *Emmanuel* exception. We disagree.

In *Emmanuel*, we did not hold that a district court's failure to give the required notice amounted to harmless error if the recharacteriza-

tion did not adversely affect the prisoner; we held that notice of the recharacterization *was not required* if the recharacterization had no adverse effect. *See Emmanuel*, 288 F.3d at 650. The Supreme Court, however, made it clear that notice is required in all cases where the district court treats a *pro se* filing as a § 2255 petition, stating that a district court "*cannot* . . . recharacterize a *pro se* litigant's motion as the litigant's first § 2255 motion *unless* the court" provides the required notice. *Castro*, 540 U.S. at 377 (first emphasis added). Given the clarity of this language, it would be improper for us to read into the Court's flat prohibition against recharacterization absent proper notice an unstated *Emmanuel*-like exception to the notice requirement, as the government urges us to do.

Moreover, as evidenced by this case, the *Emmanuel* exception when applied can produce a result directly contrary to the result compelled by *Castro*. In *Castro*, the Supreme Court held that when the required notice is not provided, the unwarned recharacterized motion "cannot be considered to have become a § 2255 motion for purposes of applying to later motions the law's 'second or successive' restrictions." *Id.* at 383. But that is precisely what happened in this case — the district court, applying the *Emmanuel* exception, treated the unwarned recharacterized motion as the first § 2255 petition and then dismissed Blackstock's 2005 § 2255 petition as successive. If a proper application of the *Emmanuel* exception (that is, an application consistent with the rules set forth in *Emmanuel*) can lead to a result that is in direct conflict with the remedy dictated by *Castro*, then it is apparent that *Castro* and the *Emmanuel* exception cannot co-exist.

Accordingly, we conclude that the Supreme Court's decision in *Castro* effectively overruled *Emmanuel*'s exception to the notice requirement. Under *Castro*, notice was required before the recharacterization of Blackstock's 2001 discovery motion; because no notice of the recharacterization was given, the 2001 motion cannot be counted as Blackstock's first § 2255 petition. And while we recognize the difficultly faced by the district court when attempting to follow the dictates of *Castro* and *Emmanuel*, it nonetheless follows from these conclusions that the district court erred by dismissing Blackstock's 2005 § 2255 petition as successive.

The government contends that even if the *Emmanuel* exception did not survive *Castro*, the district court's decision should still be

affirmed. The government argues that a § 2255 petition would have been time-barred in 2005, when Blackstock filed his Rule 60(b) motion, and would also have been time-barred in 2001, when Blackstock filed the discovery motion that was recharacterized as a § 2255 petition. Because Blackstock's § 2255 claims are untimely, the government contends that the district court properly dismissed the petition. Again we disagree.

It does appear from the information before us that AEDPA's one-year limitations period would prevent Blackstock from obtaining relief under § 2255 — Blackstock's convictions became final in 1993, AEDPA was enacted in 1996, and the motions at issue here were filed in 2001 and 2005. Nonetheless, AEDPA's limitations period is an affirmative defense, and Blackstock was not required to allege in his petition facts that could refute the defense. *See Hill v. Braxton*, 277 F.3d 701, 706 (4th Cir. 2002). Although the government asserts in its brief that Blackstock's claims are untimely, the government did not respond to Blackstock's 2005 filings with the district court. Blackstock therefore has had no opportunity to come forward with evidence that might justify the application of equitable tolling or otherwise establish that his claims are not time-barred. Under these circumstances, it would be improper for us affirm the dismissal of Blackstock's petition on timeliness grounds. *See id.* at 707 (concluding that district court may not *sua sponte* dismiss habeas petition on limitation grounds without giving the prisoner notice and an opportunity to respond). Instead, we must remand to the district court so that Blackstock may present whatever evidence he might have and the district court can determine in the first instance whether Blackstock's § 2255 petition was timely filed.

The government also contends that we should affirm the district court's dismissal because Blackstock has not shown that he is entitled to relief under Rule 60. Motions seeking relief from judgment under Rule 60(b)(6), the provision relied upon by Blackstock, must be made within a reasonable time. *See* Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."). The government argues that Blackstock's motion, which was filed more than four years after his discovery motion was recharacterized by the district

court and more than two years after the Supreme Court decided *Castro*, was not filed within a reasonable time. While we are inclined to agree with the government about Blackstock's entitlement to relief under Rule 60(b), we believe that, under *Castro*, any deficiencies in Blackstock's Rule 60 motion do not foreclose his right to seek relief on his § 2255 petition.

In *Castro*, the district court recharacterized a prisoner's filing as a § 2255 petition and then denied the petition. The prisoner appealed, but he did not challenge the district court's recharacterization of his motion. Questions about the propriety of the recharacterization did not arise until nearly three years later, when the prisoner filed a § 2255 petition that the district court rejected as successive. *See Castro*, 540 U.S. at 378. Before the Supreme Court, the government argued that the later § 2255 petition was properly viewed as successive because the prisoner failed to appeal the recharacterization of the first filing. According to the government, the failure to appeal the recharacterization made the "recharacterization valid as a matter of 'law of the case,'" and the valid recharacterization made the later petition successive. *Id.* at 383-84. The Supreme Court rejected that argument:

> No Circuit that has considered whether to treat a § 2255 motion as successive (based on a prior unwarned recharacterization) has found that the litigant's failure to challenge that recharacterization makes a difference. That is not surprising, for the very point of the warning is to help the *pro se* litigant understand not only (1) whether he should withdraw or amend his motion, but also (2) whether he should *contest* the recharacterization, say, on appeal. The "lack of warning" prevents his making an informed judgment in respect to the latter just as it does in respect to the former. Indeed, an unwarned *pro se* litigant's failure to appeal a recharacterization simply underscores the practical importance of providing the warning. Hence, an unwarned recharacterization cannot count as a § 2255 motion for purposes of the "second or successive" provision, whether the unwarned *pro se* litigant does, or does not, take an appeal.

*Id.* at 384 (citations omitted).

*Castro* thus establishes that a prisoner need not directly challenge the recharacterization of his filing; whether a later § 2255 petition is properly viewed as successive can be resolved when the later petition is filed. In this case, Blackstock filed a new § 2255 petition, and that filing was sufficient, as it was in *Castro*, to permit Blackstock to challenge the district court's recharacterization of his 2001 discovery motion. While Blackstock also filed a Rule 60(b) motion challenging the 2001 recharacterization, that motion was no more necessary in this case than an appeal of the recharacterization was necessary in *Castro*. And because the motion was unnecessary, it simply does not matter whether the Rule 60(b) motion, in and of itself, was meritorious.[2]

### III.

To summarize, we conclude that the exception to the notice requirement recognized by this court in *Emmanuel* did not survive the Supreme Court's opinion in *Castro*. Under *Castro*, Blackstock's 2001 *pro se* motion cannot be counted as his first § 2255 petition, because the required warnings were not given before the motion was recharacterized as a § 2255 petition. The district court therefore erred by dismissing Blackstock's 2005 § 2255 petition as successive. Accordingly, we hereby vacate the district court's judgment and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[2]Although the government does not develop the argument, it contends that to treat the 2005 § 2255 petition as not successive is to improperly give retroactive effect to *Castro*. *See, e.g.*, *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) ("New rules of constitutional criminal procedure are generally not applied retroactively on collateral review." (internal quotation marks omitted)). We do not believe that granting Blackstock relief in this case amounts to a retroactive application of *Castro*. *Castro* does not invalidate prior unwarned recharacterizations of pro se filings, but instead establishes a rule governing the effect that will be given those unwarned recharacterizations in the future, when a subsequent § 2255 petition is filed. *Castro* was decided in 2002, and Blackstock filed the motions at issue in this appeal in 2005. Our conclusion that Blackstock's 2005 § 2255 petition was not successive is simply the result of applying the law in existence in 2005, when that petition was filed.